A.E.B., a minor by next friend, L.D., and L.D., Individually, Respondent/Cross–Appellant,

v.

T.B., Appellant/Cross–Respondent.

No. SC 91716.

Supreme Court of Missouri, En Banc.

Oct. 25, 2011.

Lawrence G. Gillespie of Gillespie Hetlage & Coughlin LLC in Clayton, for the mother.

Joshua G. Knight of Knight & Tomich in St. Charles, for the father.

MARY R. RUSSELL, Judge.

At issue in this case is whether the trial court had authority to compel a mother to relocate back to Missouri as part of an initial custody determination under section 452.375.[1] The trial court awarded the mother sole physical custody of her child but then ordered that she relocate the child to Missouri to reside in a designated three-county area. Both the mother and the father appeal from the trial court's judgment.[2]

This Court finds that the trial court had no authority to compel the mother to relocate as part of its initial custody determination. The judgment is reversed, and the case is remanded.

## I. Background

A.E.B. (Child) was born out of wedlock in March 2006 to T.B. (Mother). L.D. (Father) was established as Child's biological father after paternity testing in 2007. At all times relevant to this case, Father has resided in St. Charles County. Mother and Child also resided in the St. Charles County area until July 2008, when they relocated to Ohio to live near Mother's mother. Child has always resided exclusively with Mother.

While Mother was preparing her move to Ohio in July 2008, Father filed a paternity and custody action against her. With his petition, Father also filed a proposed parenting plan with the trial court. This proposed parenting plan gave the parties joint legal custody and joint physical custody of Child, and it reflected a presumption that Child and Mother would live in Missouri.

A two-day trial was held in the case. At trial, Father testified that he preferred to share joint physical custody and joint legal custody of Child in Missouri. He also submitted a different proposed parenting plan during the trial. His new proposed parenting plan assumed that Mother would remain in Ohio and requested that Father have sole physical custody of Child in Missouri.[3]

Mother also submitted two proposed parenting plans to the trial court. Her first proposed plan, titled "RESPONDENT'S PROPOSED PARENTING PLAN" and presented as Exhibit A at trial, assumed that Child would be living in Ohio with Mother. The Exhibit A Parenting Plan gave Mother sole legal custody and sole physical custody of Child, and it granted Father visitation every second weekend of the month as well as certain summer vacation and holiday time.

Mother's second proposed plan, titled "RESPONDENT'S PROPOSED PARENTING PLAN (MISSOURI)" and admitted as Exhibit J at trial, was offered for use if the trial court determined that Child should live in Missouri full time. The Exhibit J Parenting Plan also provided Mother sole legal custody and sole physical custody of Child, but it offered Father more frequent visitation. Under Mother's

---

1. All references to section 452.375 are to RSMo Supp.2009, which provides the version of the statute in place at the time the trial court entered its judgment.

2. Jurisdiction is vested in this Court pursuant to Mo. Const. article V, section 10, as this case was transferred by the court of appeals.

3. Father's second proposed parenting plan also offered Mother joint legal custody.

Exhibit J Parenting Plan, Father would have visitation with Child every Wednesday night, on alternate weekends, and alternating designated vacation and holiday time.

The trial court entered its judgment regarding Father's paternity and custody petition in February 2010, when Child was nearly four years old. Relevant to this appeal, the judgment awarded sole physical custody of Child to Mother[4] and also stated: "[Mother] shall return to the State of Missouri with the minor child on or before [March 1, 2010]. The Court orders that the minor child reside in the tri-county area of St. Charles, St. Louis, or Lincoln County, Missouri." Although the judgment's express language orders that Mother return Child to Missouri and orders that Child reside in the designated three-county area, the judgment requires both Mother and Child to relocate to Missouri, as Mother was named as Child's sole physical custodian.

In accordance with section 452.310.8[5] and section 452.375.9, the trial court's judgment included a parenting plan that the court found to be in the best interest of Child. The court's parenting plan included a visitation schedule for Father that was largely similar to Mother's proposed Exhibit J Parenting Plan. Father was granted visitation of Child on alternating weekends and on every Wednesday night, as well as certain alternating holiday and vacation times.

## II. Issues on Appeal

Mother's appeal asserts that the trial court abused its discretion in compelling her to relocate with Child from Ohio to a three-county area in Missouri. She argues that, because Father's case involved an initial custody determination under section 452.375, the trial court lacked statutory authority to order relocation. She further contends that the trial court had no authority to limit her choice of residence to the designated counties.[6]

Mother maintains that the procedures in section 452.377,[7] which govern relocation of children, are inapplicable in this case. She argues that the relocation provisions of section 452.377 apply only after an initial court-ordered custody agreement has been entered, not at the stage of an initial custody determination under section 452.375. Mother asks this Court to reverse the trial court's judgment insofar as it compels her to relocate to Missouri. She asks that the relocation requirement be eliminated, and she requests that this Court implement her Exhibit A Parenting Plan based on her and Child's continued residency in Ohio.[8]

4. It ordered that Mother and Father share joint legal custody of Child.

5. All references to section 452.310 are to RSMo Supp.2009, which provides the version of the statute in place at the time the trial court entered its judgment.

6. Mother's appeal suggests that the court's relocation order infringes on the right to travel, but she acknowledges that she did not raise this constitutional argument before the trial court. This Court declines to explore whether the trial court's judgment infringed on Mother's constitutional rights, as she did not properly preserve her constitutional objections to the judgment. *See Century 21-* *Mabel O. Pettus, Inc. v. City of Jennings,* 700 S.W.2d 809, 810 (Mo. banc 1985) (noting that constitutional questions must be presented at the earliest possible moment or they will be waived).

7. All references to section 452.377 are to RSMo 2000.

8. After Mother filed her appeal, Father cross-appealed to challenge the trial court's decision to grant Mother sole physical custody of Child. Father seeks a declaration that Mother is not Child's sole physical custodian. He asks this Court to modify the trial court's judgment to declare that he has sole physical

### III. Standard of Review

■ The trial court's judgment will be upheld unless there was no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### IV. Did the Trial Court Have Authority to Compel Mother to Relocate?

The central issue in this appeal is whether the trial court had authority to compel Mother to relocate with Child back to Missouri as part of its initial custody determination under section 452.375. Regardless of the trial court's statutory authority to enter the relocation order, Father contends that Mother invited the relocation order through her submission of her Exhibit J Parenting Plan.

### A. The Trial Court Had No Statutory Authority to Compel Mother to Move

■ Section 452.377 provides for modifications to existing child custody and visitation orders to allow parties who are subject to such orders to relocate their residences.[9] The relocation procedures of section 452.377, however, are inapplicable in cases where there has not yet been an initial determination of custody. *Day ex rel. Finnern v. Day*, 256 S.W.3d 600, 602–03 (Mo.App.2008). Instead, the trial court's initial custody determinations are guided by section 452.375, which "governs the initial award of custody in paternity cases, as well as dissolution cases." *Day*, 256 S.W.3d at 602. Because the statutory limitations on relocation provided in section 452.377 do not apply before a section 452.375 initial custody determination is established, section 452.377 in no way precludes a party from relocating prior to a section 452.375 determination.[10]

■ Ultimately, the trial court's initial custody determination under section 452.375 must reflect the trial court's consideration of what custody arrangement is in the best interests of the child. *Day*, 256 S.W.3d at 602–03. The court's initial custody determination considers eight factors outlined in section 452.375.2, which provides in relevant part:

> The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:
> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

custody of Child in Missouri and that Mother may have reasonable visitation with Child while remaining in Ohio. Alternatively, he asks that the case be remanded for further findings regarding what custody arrangement is in the best interest of Child. Because this case is remanded, Father's cross-appeal is not addressed in this opinion.

9. When a party to a custody judgment seeks to relocate his or her residence in compliance with section 452.377, the trial court must "determine that the relocation: (1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection [452.377.10]." *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001).

10. Mother had a right to move to Ohio with Child in July 2008 and to remain there during the pendency of the custody proceedings. And, unlike a litigant in a section 452.377 relocation case, Mother had no obligation to provide Father notice of her move to Ohio, nor did she have a burden to prove that her relocation to Ohio was in Child's best interest and made in good faith before she could reside there. *Cf. DeFreece v. DeFreece*, 69 S.W.3d 109, 113 (Mo.App.2002) (explaining that in a section 452.377 relocation the party wanting to move must provide notice and bear a burden of proving the relocation is made in good faith and is in the best interest of the child).

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved ... [;]

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian....

Pursuant to section 452.375.9, the trial court's custody judgment must include "a specific written parenting plan," which is entered in accordance with section 452.310, and the court's discretionary determinations about what is "in the best interest of the child."

These statutes applicable to the trial court's initial custody determination provide the trial court no authorization to compel a party to relocate his or her residence. Section 452.375.2(7) authorizes a trial court making an initial custody determination to consider "[t]he intention of either parent to relocate the principal residence of the child," but this allowance for consideration of a party's choice to relocate in the future does not provide statutory authority to compel a party to relocate from his or her desired and existing residence as part of the custody judgment.[11]

In this case, the trial court had no statutory authority to order Mother to relocate her residence to Missouri as part of the section 452.375 initial custody determination. Lacking the statutory authority to compel Mother's move back to Missouri, the trial court also lacked the statutory authority to restrict Mother's residence with Child to a designated three-county area.

## B. Mother Did Not Give the Court the Authority to Compel Her to Move

■ Having found that the trial court lacked the statutory authority to compel Mother to relocate to Missouri, this Court must now consider whether Mother offered the trial court the authority to compel her to move.

· Mother maintains that she did not purport to convey to the trial court any authority to compel her to relocate with Child to a three-county area of Missouri. Father, however, asserts that Mother's Exhibit J Parenting Plan and her testimony about the plan showed that she consented to move back to Missouri. He argues that, at best, Mother confused or misrepresented the issue of whether she was willing to relocate with Child to Missouri. He highlights that Mother testified that she would "go with" Child if the court decided that Child should be back in the St. Louis area.

---

**11.** In this case, Mother's move to Ohio was already accomplished at the time the trial court made its initial custody determination. Mother argues that her completed move, coupled with her assertions at trial that she did not want to relocate from Ohio, demonstrated that there was nothing for the trial court to consider under section 452.375.2(7) regarding an intent to relocate Child's residence. As discussed further below, this Court finds nothing in the record that would result in a conclusion that Mother indicated an *intent* to relocate from Ohio to Missouri that required consideration under 452.375.2(7).

Father's arguments about Mother's purported consent to move are not supported by the record. Nothing in Mother's Exhibit J Parenting Plan indicated that Mother acquiesced to a court order requiring her to relocate her residence to Missouri. And Mother's testimony did not clearly indicate that she wished to move back to Missouri or that she agreed to relocate from Ohio.

When Mother's Exhibit J Parenting Plan was offered at trial as an alternate plan if the court decided that Child should reside in Missouri, the following testimony occurred:

[Mother's Attorney]: [Mother], if you could go to exhibit J. You understand that the Court, the judge here is charged with the duty or responsibility to determine what's in the best interest of your daughter, you understand that?

[Mother]: Yes.

[Mother's Attorney]: If she deems the best interest of your daughter is to be back here in St. Louis living here full time, what are you going to do?

[Mother]: Go with my daughter.

[Mother's Attorney]: So it's not an option that you stay in Ohio, if your daughter lives here full time?

[Mother]: No.

[Mother's Attorney]: Why not?

[Mother]: Because I need to be with my daughter. She needs to be with her mom.

[Mother's Attorney]: Exhibit J, are you offering this parenting plan as a back-up plan if the Court believes that it's appropriate for your daughter to stay here in St. Charles?

[Mother]: Yes, sir.

[Mother's Attorney]: It's not what you are wanting?

[Mother]: No, I don't want that.

[Mother's Attorney]: But you want to be with your daughter?

[Mother]: Yes.

[Mother's Attorney]: You believe it's in your best interest for your daughter to be with you on a primary basis?

[Mother]: Yes.

The following testimony related to Mother's proposed parenting plans occurred during cross-examination by Father's counsel:

[Father's Attorney]: You signed two [parenting plans], right?

[Mother]: Yes.

. . .

[Father's Attorney]: These are all alternative plans, correct?

[Mother]: Yes.

[Father's Attorney]: One is if you are allowed to stay in the State of Ohio, correct?

[Mother]: Yes.

[Father's Attorney]: The other one is if the Court were to say that [Child] had to come back to the State of Missouri?

[Mother]: Yes.

[Father's Attorney]: So what you are asking the Court to do here is let you live in Ohio?

[Mother]: Yes.

[Father's Attorney]: And then if not, to give you sole custody of [Child] in the State of Missouri?

[Mother]: Yes.

[Father's Attorney]: So you are willing to move back to the State of Missouri, correct?

[Mother]: I do not want to.

[Father's Attorney]: You don't want to, but you are willing to do it, correct?

[Mother]: If it's the Court's order, I have to.

[Father's Attorney]: It's not impossible for you to move back to the State of Missouri, correct?

[Mother]: It will be difficult.

. . .

[Father's Attorney]: [W]e are here in court today to decide whether or not [Child] comes to Missouri or stays in the State of Ohio, correct?

[Mother]: Yes.

. . .

[Father's Attorney]: Now [your Exhibit A Parenting Plan] is with you remaining in the State of Ohio, correct?

[Mother]: Yes.

. . .

[Father's Attorney]: [L]et's look at your [Exhibit J Parenting Plan]. This is the parenting plan if [Child] has to come back to Missouri, correct?

[Mother]: Yes.

. . .

[Father's Attorney]: You are asking this Court in the alternative to allow you to stay in Ohio, to give you sole physical and legal custody of [Child] here in the State of Missouri; is that right?

[Mother]: Yes, I do believe she should be with me.

Mother's testimony expressed her belief that she would "have to" return to Missouri if the trial court so ordered, but Mother's supposition on this issue was not sufficient to manufacture authority for the trial court to compel her to relocate her residence.

Absent statutory authority for its order compelling Mother's relocation to Missouri, and without an agreement by Mother that she would move back to Missouri, the trial court's judgment wrongly compelled Mother to relocate with Child to a three-county area of Missouri. The portion of the trial court's judgment requiring Mother's relocation must be reversed.

## V. Remand Is Necessary

Absent the authority to order Mother's relocation, the trial court was required to enter a judgment that reflected the actual circumstances of the parties and Child as they existed at the time of trial. *See In re Marriage of Littlefield*, 133 Wash.2d 39, 940 P.2d 1362, 1371–72 (1997) (indicating that the Washington lower court was required to "make parenting plan decisions which are based on the actual circumstances of the parties and of the children as they exist at the time of trial;" finding that "nothing in [Washington's] Parenting Act [provides] a trial court the authority to alter the physical circumstances of the parties in order to create an environment that is, in the trial court's opinion, more desirable for the child than that which exists;" reversing an initial dissolution judgment that imposed a geographic restriction on a mother).

Both Mother and Father acknowledge that the visitation terms in the judgment are not designed for Mother's continued residence in Ohio, and reversal of the trial court's relocation order may render unfeasible other portions of the court's judgment. Remand is warranted in this case to provide the trial court the opportunity to enter a judgment that does not exceed its authority and that reflects its determinations regarding the appropriate custody and visitation arrangements for Child.

## VI. Conclusion

For the foregoing reasons, the trial court's judgment is reversed, and the case is remanded.[12]

12. This Court makes no determinations as to the appropriate custody and visitation ar-

rangements for Child.

TEITELMAN, C.J., FISCHER and STITH, JJ., and MAY, Sp.J., concur; BRECKENRIDGE, J., dissents in separate opinion filed; PRICE, J., concurs in opinion of BRECKENRIDGE, J.

PATRICIA BRECKENRIDGE, Judge.

I respectfully dissent from the majority's reversal of the trial court's judgment because it erroneously required T.B. (Mother) to relocate back to Missouri. I agree with the majority's holding that the trial court had no statutory authority to compel Mother to move from Ohio to Missouri and live in a three-county area. I also agree that Mother made clear in her testimony at trial that she did not want to live in Missouri. Nevertheless, Mother did not want to risk losing custody of Child if the trial court believed that the best interests of Child required Child to live in Missouri. She intentionally asked the trial court to enter the order she now challenges. She admitted into evidence Exhibit J, a proposed parenting plan titled "RESPONDENT'S PROPOSED PARENTING PLAN (MISSOURI)," providing for visitation by L.D. (Father) that only could only be accomplished if Mother and Child lived in Missouri. She also testified at trial that this parenting plan was a "back-up plan if the Court believes that it is appropriate for [the parties'] daughter to stay ... in St. Charles." She further testified that under her alternative plan, Exhibit J, she would be given "sole physical and legal custody of [Child] here in the state of Missouri." On this record, I would find that Mother invited the trial court error she now raises on appeal, so she is not entitled to relief from the erroneous provision in the judgment that required her to relocate back to Missouri.

Under the invited error rule, "a party is estopped from complaining of an error of his own creation, and committed at his request." *Sprague v. Sea,* 152 Mo. 327, 53 S.W. 1074, 1078 (1899). The invited error rule, as articulated by this Court, is sufficiently broad to apply in the circumstances of this case. "[A] party will not be heard to complain of alleged error in which, by his own conduct at the trial, he joined or acquiesced." *Taylor v. Cleveland, C., C. & St. L. Ry. Co.,* 333 Mo. 650, 63 S.W.2d 69, 75 (1933); [1] *Ratcliff v. Sprint Missouri, Inc.,* 261 S.W.3d 534, 545 (Mo.App.2008); *see also Torrey v. Torrey,* 333 S.W.3d 34, 38–39 (Mo.App.2010). Although Father first raised the issue in his first parenting plan filed with his petition and in his testimony that he preferred a parenting plan in which he and Mother would share joint physical and legal custody of Child in Missouri, Mother joined and acquiesced in Father's suggestion by her conduct at trial. Mother, intentionally and strategically, offered in evidence at trial a parenting plan that required her and Child to live in Missouri. As a consequence, Mother is not entitled to relief from the trial court error that she induced. *See Taylor,* 63 S.W.2d at 75.

Mother did not invite the trial court to erroneously restrict her Missouri residence with Child to a designated three-county area, however. Because the provision restricting her residence to three Missouri counties is beyond the error invited by Mother, I would strike that provision but would affirm the judgment in all other respects. Rule 84.14.

---

1. This Court in *Taylor* referred to the invited error rule as "too well settled to require cita-

tion of authorities...." *Taylor,* 63 S.W.2d at 75.