764 S.W.2d 664 (1988)
D.K.L., Petitioner-Respondent,
v.
L.C.L., Respondent-Appellant.
No. 54329.
Missouri Court of Appeals, Eastern District, Division One.
September 27, 1988.
Motion for Rehearing and/or Transfer Denied November 29, 1988.
*665 Lawrence O. Willbrand, Lynn D. Barnett, St. Louis, for respondent-appellant.
Robert Francis Dreyer, Thomas J. Casey, St. Louis, for petitioner-respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied November 29, 1988.
CRANDALL, Presiding Judge.
Respondent, L.C.L. (wife), appeals from the decree of dissolution of her marriage to petitioner, D.K.L. (husband). She challenges the award of custody of the minor daughter to husband and the division of marital property. We affirm.
Husband and wife were married in November 1978. At the time of the marriage, wife was 17 years of age and husband was 20. In February 1979, a daughter, M.L., was born. The parties separated on January 1, 1986, when wife moved out of the family home to live with her boyfriend.
During the marriage, wife stayed home with M.L. until M.L. was two years of age. After that, wife was employed sporadically at jobs which paid minimum wage. She changed employment frequently. There was evidence that she was suspected of stealing from a previous employer as well as from members of her family. Wife pleaded guilty to a charge of trespassing which resulted from her breaking into an employer's place of business, allegedly to retrieve her paycheck. At the time of dissolution, wife was employed full time and was being paid at the minimum wage rate.
Throughout the marriage, wife frequented bars in the evening hours and would often stay out until 2:00 or 3:00 a.m. She sometimes left M.L. with a baby-sitter overnight. She admitted that she engaged in extramarital affairs with several men, both before and after the separation from husband. Neighbors testified that one man visited with wife in the marital house while M.L. was at school.
At the time of dissolution, husband had been steadily employed for almost ten years with the same company. He was earning about $1,200 every two weeks.
*666 Husband went out two nights per week during the summer to play Softball. He admitted to smoking marijuana "socially." There was contradictory evidence as to whether he had been involved in an extramarital affair before the separation.
After the separation, husband continued to reside in the family home with M.L. For about six months, he assumed the primary responsibility for the care of M.L. Wife visited with M.L. irregularly during that period of time.
At the pendente lite hearing, M.L. expressed her wish to live with her mother. The court awarded temporary custody of M.L. to wife for three weeks of the month and to husband for one week of the month.
The trial court issued a decree of dissolution and determined the aggregate value of the marital property to be approximately $45,000 to $48,000. The trial court did not make findings as to the value of specific items of marital property. The trial court awarded husband the family home, the furnishings in his possession, a 1985 Cutlass, a 1980 Mustang, a savings account, a checking account, stocks, his pension plan, and life insurance policies. The court awarded wife the furnishings in her possession and $5000 for her interest in the marital property awarded to husband, payable to wife at $100 a month.
The trial court also awarded to husband primary custody of M.L. and ordered wife to pay $25 per week in child support to husband. Wife was granted visitation rights and temporary custody. At the dissolution proceeding, when asked by the court with whom she wished to live, M.L. expressed no preference as to either parent.
In her first point, wife contends that the trial court erred in awarding custody of M.L. to husband.[1] She first claims that there was no evidence that she was unfit and that it would be in the best interests of a daughter to be in the custody of her mother. Secondly, wife claims that the status of the pendente lite (PDL) award of custody to her was such that the husband must show a change in circumstances in order to obtain primary custody at the time of the dissolution, a burden similar to that of a petitioner in a motion to modify. See Section 452.410, RSMo (1986).
As to the later proposition, wife cites no authority and there is none. A PDL award is simply that, a temporary award pending the final hearing. Tzinberg v. Tzinberg, 631 S.W.2d 681, 683 (Mo.App.1982). The purpose of the PDL order is to provide temporary relief pending a full hearing on the merits.
As to wife's former proposition, husband does not have to prove that wife is an unfit mother in order to be awarded custody. Whether the mother is fit or unfit is simply evidence bearing on the decision of custody. While unfitness might preclude an award of custody, fitness does not mandate an award of custody. A contrary holding would violate the statutory prohibition against custodial preference based upon the sex of the parent and/or the age and sex of the child. Section 452.375.3, RSMo (1986).
The court must determine custody in accordance with the "ultimate and sole test" of the best interests of the child. Section 452.375.2, RSMo (1986). The trial court has considerable discretion in awarding custody, and its judgment should not be disturbed unless the best interests of the child so demand. M.D.R. v. P.K.R., 716 S.W.2d 866, 868 (Mo.App.1986). The trial court has the superior opportunity to judge the credibility, sincerity, and character of the witnesses, as well as other intangibles that might not be fully revealed by the record. Id. at 868-869.
The award of custody may not be used as a reward or punishment of either parent. Bashore v. Bashore, 685 S.W.2d 579, 581 (Mo.App.1985). The court may, however, consider the moral fitness of the parents in determining who should have custody of the child. M.D.R., 716 S.W.2d at 869. A good environment and a stable home is generally considered the most important single consideration in custody *667 cases. M. v. M., 688 S.W.2d 384, 386 (Mo. App.1985). There must be considered what conduct a parent may either inspire by example or foster by condonation. Past and present activities may be a reliable guide to the priorities of a parent. Id.
In the present case, there was evidence that, during the marriage, wife spent many evening hours bar-hopping, had sexual relations with men not her husband, was suspected of stealing, and had employment difficulties. There was sufficient evidence for the trial court to conclude that wife's actions did not demonstrate the maturity and judgment required to be a good custodial parent.
Although husband's conduct during the marriage was less than paragon, his treatment and parenting of M.L. was acceptable. His steady employment record and superior earning potential augur a stable home environment for M.L. The trial court did not abuse its discretion in awarding custody of M.L. to father. Wife's first point is denied.
In her second point, wife challenges the division of marital property. We note that in the record before us wife places no value on the marital property. She accepts the trial court's valuation of $45,000 to $48,000. It is clear from the record, however, that the court's valuation of the marital property represents the gross value not the net value of the property.
In dividing marital property, the trial court is required to make a just division; it need not make an equal division. Ware v. Ware, 647 S.W.2d 582, 584 (Mo. App.1983); see also Section 452.330, RSMo (1986). Absent a request by the parties, the trial court is not required to make specific findings of fact as to the value of the items of marital property awarded in the decree. Dardick v. Dardick, 670 S.W. 2d 865, 868 (Mo. banc 1984); see also Rule 73.01(a)(2). The appellate court can evaluate the trial court's division of the marital property in a meaningful fashion based on the evidence in the record. Dardick, 670 S.W.2d at 868.
A review of the record suggests the following values be placed on the marital property:

PROPERTY VALUE VALUE
 TO HUSBAND
Marital home ($48,000 less $40,000
mortgage) $8,000
1980 Mustang 1,000
1985 Cutlass ($9,400 less $8,000
loan) 1,400
Savings Account 3,100
Checking Account 200
Life Insurance Policies (Term) -0-
Stocks 750
Pension (nonvested) -0-
Furnishings (one-half) 1,000
 ______
Total 15,450
Less $5,000 payable to wife - 5,000
 _______
Total $10,450
 TO WIFE
Wife's share of marital property $ 5,000
Furnishings (one-half) 1,000
 _______
 $ 6,000

Here, the marital estate was modest, consisting mainly of the family home. Given that husband was awarded custody of the minor child, M.L., it was desirable for him to also be awarded the family home. See Section 452.330.1(3), RSMo (1986).
Wife's misconduct during the marriage was one factor which the trial court could consider in apportioning the marital property. See Section 452.330.1(4), RSMo (1986). Wife's conduct during the marriage has been discussed previously in the opinion. In addition, wife's conduct after the separation imposed an additional burden and hardship on husband. See Anderson v. Anderson, 656 S.W.2d 826, 828 (Mo.App. 1983). Wife left the marital home to reside with her boyfriend. At that time, she left M.L. with husband; and, for six months following the separation, rarely saw M.L. During that period of time, husband was completely responsible for the care of M.L. and received little assistance from wife. The trial court did not abuse its discretion in dividing the marital assets. Wife's second point is denied.
The judgment of the trial court is affirmed.
REINHARD and CRIST, JJ., concur.
NOTES
[1] We note that wife does not challenge the award of child support to husband in the amount of $25 per week.